Let's wait just a minute. Let everyone get settled. We've got plenty of time. All right, Ms. Brodiaga, nice to see you again. Good morning, Your Honor. Good to see you. As always, it's a pleasure to be here. I'm Lisa Brodiaga from San Benito, Texas, on behalf of Ms. Gonzalez. This is a relatively straightforward case from some points of view and complicated from others. Pretty unusual, though, isn't it? It's very unusual, Your Honor. You've seen a lot of cases, and you may not have seen one like this. Yes, sir. This is an acquisition case, meaning that Ms. Gonzalez was born in Mexico of a U.S. citizen father. And the question is whether she acquired citizenship through him. There are two aspects. There's the substantive aspect of did she acquire citizenship, and there's a procedural aspect of whether the district court had jurisdiction to declare that she had acquired U.S. citizenship. Substantively, Your Honors, there is no genuine dispute over her claim to U.S. citizenship. There are three elements she must show. She must show her father was a U.S. citizen. She must show that he spent the requisite period of time in the U.S. prior to her birth. And she must show that she was legitimated. The fact that the first two elements are satisfied is shown by the 2014 decision of the USCIS when they denied her motion to reopen her proceedings and noted that her older sister had acquired citizenship. They gave her a certificate of citizenship based on this court's decision in Saldana-Irachete saying that if your father filed your foreign birth certificate, that legitimated you. But he did not file Ms. Gonzalez's birth certificate, so she was not legitimated by that. However, the problem in her case was that her father, although he married her mother in apparent compliance with the laws of Texas in 1972 when she was 10 years old, he had a prior undissolved marriage. And as a result, the marriage to her mother was void. However, there's a very important distinction between being a child born out of wedlock and a child born of a void marriage. A child born out of wedlock under immigration law has the father where the citizen parent is the father. The father has to take certain affirmative steps to legitimate the child before the child is, in her case, 21 or else she is not deemed legitimate. The product of a void marriage, such as here by contrast, the fact of going through the marriage ceremony, which is sometimes called a putative marriage, automatically legitimates the child under both Texas and Mexican law. The Texas law at issue was Section 12.02 of the Texas Family Code, which was enacted in 1973, the year after her parents went through this marriage ceremony. And it says, quote, A child is a legitimate child of his father if at any time his mother and father have attempted to marry in apparent compliance with the laws of this state or another state or nation, although the attempted marriage is or might be declared void and the child is born or conceived before or during the attempted marriage. So that covers Ms. Gonzalez. When she was 10 years old, her parents went through that marriage ceremony in the state of Texas, even though the father had not divorced his first wife. The confusion in this case, Judge, for which I accept partial responsibility, was that this distinction between product of a void marriage and being born out of wedlock was not adequately developed during the administrative proceedings. And the immigration treated it all the time as having been born out of wedlock. She filed her first N-600 to get a certificate of citizenship, or actually her mother filed it when she was 10 years old. And that application showed on its face that she was the product of her father's second marriage. So that information was given to immigration from the very beginning. She was nonetheless, at that point, her father was in a nursing home, and the very experienced immigration attorney who interviewed the family made findings that, yes, the father's a U.S. citizen, yes, he spent enough time here, and yes, she was legitimated by the marriage of her parents when she was 10 years old in the state of Texas. But unfortunately, they sent a letter to her father to come in for further investigation, and he was in a nursing home. He did not appear. So that application, we don't know whether it was abandoned or denied, but it died. In 1983, she was born in 62. So in 1983, she filed a second N-600 by herself. Her father by then was deceased. He died in 1980. This application, the line of how many times have your parents been married, was left blank. She was interviewed by a different officer, but, of course, the first application was still in her file. She was interviewed by a different officer who apparently did not ask that question because there were no check marks by those questions, but we don't know whether she went on the basis of what the first officer had found or whether she just skipped her. But in any event, she approved the application, and Ms. Gonzalez obtained her certificate in 1983. In 1991, the government sent a notice to her saying that they were going to revoke her certificate of citizenship on the erroneous grounds that, quote, because her father had not been legally married, she could never acquire citizenship through him. Apparently, they did not at that time understand that both Mexican and Texas law made her legitimate by virtue of this putative marriage. She and her attorney at that time both claimed that they did not receive that letter, so they did not respond to it. And from 1991, when that letter was sent to 2006, nothing happened. In 2006, immigration sent another letter to her attorney saying, we're going to cancel her certificate of citizenship, come in and surrender it. They complied. They went in, and the same day, they filed a motion to reconsider that revocation. That motion was pending until 2008 when it was finally denied, and she did not file an appeal from that administrative denial. And that is one of the key questions in this case or key facts in this case. In 2014, through a different attorney, she filed a motion to reopen those proceedings. Now, under the law regulations, in effect at that time, if you were once denied an N-600, you couldn't file a second one except by virtue of a motion to reopen. Obviously, they understand that citizenship is too important to say that just because you didn't make it the first time doesn't mean you can't come back later and prove your case later. So another attorney filed a motion to reopen in 2014. And that was based in part on Saldana Errechete and in part on additional evidence that this attorney had developed. That motion was denied in 2016. And this time- What was the additional information that had been developed that you just alluded to? I'm sorry? What was the additional information that the attorney developed? It was that her father had claimed her as his child before the IRS and claimed that that necessarily had to have been done in writing and under oath, which is one of the manners in which you can legitimate a child. But the evidence she presented of that was only a computer printout. She did not have access to the original documents that he had filed. But she was still treating it, as was basically everyone at that time, as out of wedlock and seeking legitimation and not realizing that by statute she was legitimated when her parents married. So she was still going, as was everybody else, as if she were born out of wedlock. But she appealed that, and the AAU took jurisdiction, denied the appeal on the merits in 2016. And it was at that point where- Actually, I had had another case with this same issue of void marriage and marriage out of wedlock, and I had discovered these cases. And so we went to court, filed a 1503A action. And the government claimed that because she had not done an administrative appeal from the 2008 denial, that there was no jurisdiction. On the one hand, they claimed that- Because of limitations. Is that right? Statute of limitations. Yeah. But they said that the five-year statute of limitations began to run in 2008. But statute of limitations can't run unless there's a cause of action. So essentially they're saying that because she did not file an appeal at that time, no cause of action accrued, but the statute ran anyway. And that really makes no sense. And if you look at this court's case in Rios Valenzuela, this statute says any person in the United States can file such an action with two exceptions, and the two exceptions are, first, that the issue of citizenship arose when you were in removal proceedings, and the second is that you're in removal proceedings when you try to file your action. And in that case, the person had been in removal proceedings when the action was filed. And this court held that the person claimed,  because I would never be able to file a 1503A action because I was in removal proceedings when my citizenship was first asserted. And this court said, no, we're not going to claim that that's an albatross around your neck because you can wait until the proceedings are over, and then if you file something else requesting citizenship and that is denied, then you can go ahead and file a 1503A action on that basis. And we're saying that this is equivalent to that, that how can a statute run if there's never a cause of action, which there never was, and even if it did run by virtue of this motion to reopen, which the regulations authorize and recognize that citizenship is far too important to say that if you come up with new evidence or circumstances change or whatever, you can't go back and try again to get your certificate of citizenship. The same thing applies in this context. The fact that she did not file an administrative appeal in 2008 cannot be an albatross around her neck forever, saying that she would never be able to get proof of her U.S. citizenship. As it is, she's living here as a U.S. citizen, but a second-class U.S. citizen. She cannot vote. She cannot get a driver's license because she doesn't have proof of her citizenship. She cannot vote. She cannot travel. She cannot seek employment because she cannot prove that she's a U.S. citizen. And the government is adamant that they're not going to give her documentation of that citizenship. Let me ask you a question. She initially received her citizenship certification, and then several years go by, and then the government announces that they're going to reconsider that and terminate it. With all those years going by, what events, if any, precipitated that determination by the government? What would cause that action to be taken? I have a hard time grasping in this huge administrative operation with all the difficulties of the border and all the problems that we have with this that someone who's got a certificate in their hands, then years and years go by, and then she gets an announcement from the government that we now determine X. What caused that redetermination? Is there some process I'm missing in this? Your Honor, that's a question that I've asked myself and for which I have no answer. From 1983 when she was granted the certificate to 1991 when they first sent out the letter, so far as I know, nothing happened. And her attorney and she did not receive that letter. And then from 1991 to 2006, again, nothing happened that I'm aware of. I have no idea how either of those events took place. So the first she knew that her citizenship was in question was in 2006. And she immediately filed a motion to reconsider. That motion did mention, in fact, that she was a child of a void marriage, but the authority that was used was not the statute. It was the BIA decision that the government distinguished. And then she did not appeal it. There can be a million reasons why somebody does not file an administrative appeal in 30 days. It can be that you don't have $600 to file the appeal. It can be that you're not aware that you have grounds for appeal. But in any event, she didn't appeal it. But in 2014, she filed a motion to reopen. Again, the attorney did not apparently recognize the difference between a void marriage and out of wedlock. But she did file a motion to reopen. It was adjudicated on the merits. She did appeal it to the AAU. They denied it. And she then went to federal court. How those things happened, I have no idea. Perhaps the government does, but I don't. And you saved time for rebuttal. Thank you very much, yes. Mr. Salone. Good morning, Your Honor. May it please the Court. Michael Salone on behalf of the United States of America. This case arises from plaintiff's attempt to flout Congress's clear five-year statute of limitations for bringing a declaratory judgment action under 1503 subsection A. So what do you do with the argument that there was no cause of action? There was a cause of action, respectfully, Your Honor. The fact that plaintiffs did not exhaust their administrative remedies in no way toll the statute of limitations, period, or excuse the ability to file a declaratory judgment action, the fact that the time frame for appeal had run and lapsed meant that there were no further administrative remedies available to the plaintiff. And essentially it's the final government action rests right there. And plaintiffs will have the court rewriting and essentially erasing the statute of limitations from the statute, which is in direct contravention. Exhaustion presupposes that you have something to exhaust, doesn't it? Correct, but – But I don't understand. You said there's no cause of action, and it's because she didn't exhaust. So she had – when the 2006 – sorry? When the 2006 revocation of the – or cancellation of her Certificate of Citizenship came down, she had two decisions to make. By regulation, she could file a motion for reconsideration, which she did, and then following the denial of the motion for reconsideration, the regulations allow for an appeal to the AO. Plaintiff knows these procedures because she enacted those and followed – And I guess, like Judge Higginbotham, I'm trying to understand what that has to do with the existence or not of a cause of action. You're talking about exhaustion of an administrative appeal. Her argument is there wasn't any cause of action for her to raise at that time on these facts. And our response to that is that exhaustion is just a jurisdictional requirement. You must exhaust administrative remedies before going into federal court. The design there is so that the administrative agencies have the opportunity to weigh in and correct decisions and to avoid the overuse of judicial resources and running to federal court unnecessarily. And so it's a jurisdictional requirement, not so much, as plaintiffs would argue, a direct cause of action that would arise after the administrative remedies are exhausted. So under plaintiff's theory, the statute of limitations period can be restarted after every subsequent final administrative decision. That is wholly unprecedented and without any support. That would wipe out the limitations as an effective bar, wouldn't it, if they could just keep filing motions to reopen? Correct, Your Honor. It might do that, but you have adopted no internal rules to prevent that from happening. The plain language of the statute doesn't say that, does it? It does not say that. I agree. What you're asking for is, understandably, is a protection of the administrative process itself so it's going to keep coming back, repeating, knocking on the door. The difficulty that I – you plead that that causes a difficulty, but you have adopted no rules internal to yourself as to resolve that problem. Congress, the statute itself simply doesn't say that, and we'd like to file statutes by their plain language. We say what the Congress said Congress meant. But I would contest or argue that plaintiff's theory, and if this court was to uphold that reading, it would violate the maximum of statutory construction by essentially creating or rendering the language to be irrelevant. You granted a citizenship to a person, and then years went by with no change of circumstances explained to us in terms of what that person did or didn't lose that citizenship, and then there's a redetermination somewhere up the line, and now she's entitled to that. Is there no exhaustion of administrative remedies of some sort to the government? And you turn around to this citizen on his face and say, King's X, you're out again, and then you bar them. What is it, if anything, justifies that long delay in redetermination? What precipitated that? And to be perfectly frank, I am not sure. I'm not sure anybody in the government knows about that. Somebody just picked up a file and this capriciously happened. So all I'm saying to you is come here and plead what you're pleading. I understand that in an ordinary court, but it doesn't present a very sympathetic case unless it's just totally barred by law. There's no way that's going to work. Maybe it is barred by law. One other aspect is that so not only is plaintiff available, could she avail herself of endless administrative remedies. So regardless of whether or not she can seek declaratory judgment in federal court, she can continuously file administrative remedies with USCIS. But additionally, plaintiff has already filed two passport applications, which have been denied, and has filed a 1503A action in the Southern District of Texas while this appeal has been pending. So plaintiff has conceded that she's not willing to wait for citizenship determination and is willing to bring APA claims against the State Department for the denial of the passport. Will, can you blame her? Really? Excuse me? Can you blame her? No. I understand the gravity of the situation. But it presents it in a light where there are additional remedies outside from judicial review of U.S. citizenship and immigration services, denial of the motion for reconsideration. But you just told me the passport application was denied. Correct. What additional remedies are you talking about? So she's already availing herself of judicial review of the passport decision, so she's able to, it's not the end of the road for her claims to citizenship. Am I correct that on this legal issue of limitations that the 7th and 11th Circuits agree with your position? I mean, you can speak to that if you want to, but would we be creating a circuit split if we disagreed with your position? So the two circuit courts that have ruled on this issue are unanimous in the sense that the final, or the statute of limitation runs from the first final administrative denial. Do those cases involve the question of an unaccrued cause of action? So in Bensky and Hauer, they involved a loss of, it was a State Department issue regarding the certificate of loss of nationality, and the circuits were debating as to whether or not the certificate of loss of nationality constituted a denial of a right or privilege of U.S. citizenship. But regardless of that issue, both circuits have decided that the ultimate issue was the denial of the passport that followed. And I believe it was Bensky where the plaintiff filed two passport applications. I don't follow. You said something about she has some other alternative here about passport. What is that? Denial. Review of a passport denial. How can that give her any relief? So it's from a different federal agency. So the government's position is that 1503A would bar further review of U.S. citizenship and immigration services decision on the certificate of citizenship, but that does not preclude her filing a 1503A action against the State Department for the denial of a passport. And what comes of that? All of the rights and privileges of that 1503. Keep your voice up, please. Excuse me. It's the traditional 1503A action. Tell me, what relief does she get from the passport process challenge? She gets a passport, but she's not a citizen. The passport is just. . . Can you tell me that she can regain her citizenship through a passport application? Correct. It would go back to your original bar that to allow her to come back to this thing vitiates the statute. In other words, why is that a complete answer to your difficulty? If she has some other passport, it seems to me that the government is highly burdened with your administrative rejection when you say, well, you're barred, you're out of here, whatever. However, if you don't get a passport, you can come back and relitigate the whole thing. That doesn't make so much sense. Are you representing to the court that through this passport application that she can get a determination that she's an American citizen? Yes, and a passport stands for that proposition. Is that your view as a lawyer? I believe appellate counsel would have the same reaction, that the certificate of citizenship conveys the same rights and privileges of U.S. citizenship as a passport would. But in order to get the passport, you need to be a U.S. citizen, don't you? Right, but you can prove citizenship or eligibility for citizenship through the passport application. But she can relitigate this whole question again there? Completely, and she's already attempting to. And additionally, she can file additional motions. Why don't we just stay this and wait and see what happens? I do believe that. What's the point in running this to the ground and making that determination? Maybe she'll get it the other way. The issue in the pending Southern District of Texas. I'm sorry? The issue in the Southern District of Texas case that's pending right now is that I believe the plaintiff has had two passport applications denied and, again, has failed to file a 1503A action within the five-year statute of limitations. Now you're telling me that she can't get relief that way. Which is it? Just tell me straight up. You said that she has this passport application and she can get relief that way. When pressed on it, you say, well, actually, she's already screwed that up, too, so she won't get relief there. Am I mistaking what you said? No. Well, then I don't understand. I apologize if I was unclear or inarticulate. I'm sorry. Keep your voice up. I apologize if I was inarticulate on that issue. The plaintiff is also raising an APA claim, saying that in the event that she's precluded from filing a 1503A action from the passport denial, that she has a cause of action under the Administrative Procedure Act. Well, it seems to me that maybe there's one alternative. What's wrong with that? Given that position of the government, there's no point in her doing unnecessary work. Let's see if she gets relief there. I do believe that if the court was to not rule on the issue of when the statute of limitations kicks in and from which final administrative action the statute of limitations begins to run from, that it runs against public policy and against Congress's intent in creating the statute of limitations in order to adjudicate claims in federal court when their evidence is still intact, when the witnesses are still alive, and it's close in time and proximity to— What we're talking about is when we decide. I don't think we're going to frustrate that policy if we wait to see, do we? How do we frustrate that policy? You're right. I can't think of one off the top of my head. So let me return. You gave me a forthright answer to my question about the other circuits, but you didn't quite answer my question. If we disagree with your position here, will we be creating a split with the Seventh and Eleventh Circuits? Yes. And you also pointed, I believe, to—we're not—because they're not at the circuit level, but Eastern District of New York and the District of Columbia, is that right, have reached the same conclusion as the Seventh and Eleventh Circuits? I believe the Second Circuit, when they upheld or affirmed the Eastern District of New York case, that they didn't necessarily get to the jurisdictional aspect, but the government's position is that the only circuits to have ruled on this issue as to when the statute of limitations begins to run and based on which final administrative action. It's only the Bensky decision in the Seventh and the Howard decision in the Eleventh. That limitation spirit would have no relevance to the relief issue available to her, possibly through the passport challenge. Correct. The government takes the position that she's not precluded from bringing a declaratory judgment action against a different agency, or if she was to file a third passport application with the State Department, then she could bring another—a fresh 1503A action that would not be time-barred. I'm not sure I follow what you just said. The government is not going to turn around and take the position with a passport application that you're not timely? That's my understanding from the pleadings, and I'm not handling that litigation. But from my understanding is that Plaintiff has conceded that she did not file within five years of the passport denial, and so she's bringing an APA claim in addition to the 1503A claim to try to obtain judicial review. Now, Counselor, you mentioned Auer and Bensky, but didn't the Third Circuit determine in Whitehead that the issuance of a CLN was not a denial of a claim of right of U.S. citizenship? That's correct, Your Honor, and that issue is also at stake in Bensky. It was—the circuits were debating or quarreling amongst themselves as to whether or not the CLN constituted a denial of a right or privilege of U.S. citizenship. But regardless of that issue, they unanimously concluded that the statute of limitations under 1503A runs from the final administrative denial. So regardless of whether or not a CLN was a denial under the statute, the subsequent— Well, I understand the ultimate outcome in the case, but— I agree there isn't a— So all the circuits aren't unanimous on it. Correct. On the effect of a CLN. Correct. All right. That's a limitation that will run on an approved cause of action, right? Excuse me, Your Honor? You don't have a time bar for a cause of action you don't have. That's correct. Okay. But our—the government's position is that the— Your argument is really one of joinder, that at the time you originally went there that you had a ruling that that closed everything off. We circle back to this question of a cause of action and a time bar. I don't ever—it doesn't occur to me that I'm facing a time—a period of limitation running against a cause of action that I don't have, and it accrues later. Normally, this is a cruel time. But the—or I would argue that the cause of action accrued at the time of the 30-day appeal window ran. So after the 2008 denial of the motion to reconsider, plaintiff had 30 days to file an appeal to the AAO. And upon that failure to—it marked the end of the decision-making process, and it had legal consequences. So under the— For whatever cause of action she then had. Correct. Okay. And if she asserts that she's got a new cause of action, what do you say to that? Would it be a new cause of action against a different government agency or— Well, the government's the government. Correct, but the State Department issues the passports and Homeland Security issues the Certificate of Citizenship, and the State Department's regulations don't provide for the administrative review procedures that are existing for DHS. So it's not a one-for-one analogy in my view. All right. Thank you, Mr. Shalom.  Mr. Bergiaghi, you've saved time for rebuttal. First of all, I disagree that there is a circuit split because there is a very important distinction between the denial of a passport and the denial of an application for a Certificate of Citizenship. First of all, there is no regulation with respect to a passport that if you get new evidence or whatever, you can come back and file a motion to reopen. That is a regulatory provision that allows a person who— What happens the first time you couldn't find your father and you couldn't prove physical presence? Now you found your father and you can prove physical presence. The regulations allow you in the context of a Certificate of Citizenship to file a motion to reopen, and that is what she did. So this is still all the original case from that point of view. And as far as the cause of action jurisdictional, this court in Rios Valenzuela said that it is jurisdictional to exhaust your administrative remedies. So if—I don't see how they can say a cause of action accrued if there is no jurisdiction. There was no cause of action because she did not exhaust her administrative remedies, but she did file a motion to reopen in accordance with the regulations, and that motion is— the denial of that motion, that was done through a different attorney. The denial of that motion is in the records and it's in the record excerpts. Excuse me, it's—I can give you the citation to it. But the important thing is that with a passport you can't do that. And the cases that the government is citing, the Seventh Circuit case actually, that was a 1503A action, and they found that the person was in the United States at the time the action was filed, so they never went on the issue that you have here. And with respect to the current litigation regarding the denial of her passport, we discovered after we filed it, fortunately we did include both a 1503A action and an APA action, and we discovered after we had filed it that another attorney had filed an application for a passport for her back in 2011, and when it was denied had not filed a cause of action there. And there's nothing—there's no regulation that allows you to file for a second one and renew that cause of action. But in that—and we have that action pending, and the government has filed a motion to dismiss our APA claim on the grounds that it should have been done through 1503A. Now, that is still pending before the district court, but it's not clear that the government is going to go along anyway with the argument that he made here, that she can do it through the APA because they have a motion to dismiss pending to dismiss that cause of action. And we concede that with respect to the passport, we're not going to argue that there would be jurisdiction under 1503A for the denial because we discovered that, in fact, she did have a prior one that was denied and did not exhaust that. But the regulation is very clear, and there's good reason for that. There are all kinds of reasons why you may need to file a new application for a certificate of citizenship. And citizenship, if you have it, is far too important to say too bad. You tried once and you failed. You could almost say in this case that she failed with the first application back in 1972 because her father did not appear for the interview. For all we know, that one was denied and was not appealed, so you could say that that was the first time that she failed to exhaust her administrative remedies and she lost her right to do so back in 1972 when her father in the nursing home could not appear to answer their questions. But she has followed the regulations in this regard. There's no question that the government did not attempt to claim she's not a citizen. She is a U.S. citizen, but she is now a second-class U.S. citizen because they're claiming now that there's no way she can get evidence of that citizenship, and without it, she can't do anything. And citizenship is far too important to be treated in that manner. And that's what the regulations— Let me just ask you this. You say she attached a copy of the certificate of citizenship that was issued to her sister. Is that because the facts and circumstances regarding her are identical to her sister's facts and circumstances? Her sisters have them because her father filed their birth certificates, and under this court's decision in Saldana y Rechete, that is sufficient to legitimate them. It was done on the basis of legitimation, not on the basis of the void marriage. But there's no question that under both Tamaulipas law and Texas law, at the time the product of a void marriage is legitimate. The civil effects don't accrue to the parents if they did this in bad faith, but the children are not penalized because their parents' marriage was void. But her sisters have their certificates, and the older sister is one of the ones that's in the record showing that, clearly, if the older sister got it, then the father's a U.S. citizen and he had enough time in the U.S. before the birth of the older sister, and therefore by definition before her birth, to transmit citizenship to her. So the only issue on substance is the legitimation, and the Texas statute is 100% clear. The marriage certificate of her parents is in the record. All right. Your time now has expired, Ms. Bergiaga. Thank you very much. Your case is under submission. So I'm just curious.